**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

VULCAN PIONEERS OF NEW
JERSEY, et al.,

               Plaintiffs,                Civil Action No. 02-5802 (SDW)

     v.

THE CITY OF NEWARK, et al.,

               Defendants.            **OPINION**

                                          September 9, 2008

**WIGENTON, District Judge**

      This matter comes before the Court on the motion for summary judgment (Docket Entry No. 96), pursuant to FED. R. CIV. P. 56, filed by Defendants the City of Newark, Stanley J. Kossup, and Edward Dunham (collectively, "Defendants"). Defendants seek summary judgment against Plaintiffs John West ("West"), Jacqueline Jones ("Jones"), and Sidney Marble ("Marble") on Counts I, II, III, and V of the Amended Complaint. This motion has been decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the motion for summary judgment is granted in part and denied in part.

## I.    Factual Background

      This action, brought in 2002 by 24 individual firefighters and the Vulcan Pioneers of New Jersey, concerns discrimination in employment based on race and gender. Plaintiffs are past and present firefighter employees of the City of Newark Fire Department. After years of litigation, the only Plaintiffs to remain in this case are West, Jones, and Marble.

      On March 25, 2003, Plaintiffs filed the Amended Complaint. In the introduction, the Amended Complaint states that, in a 1980 consent decree, the City of Newark (the "City") agreed

to certain measures to ensure that minority firefighters were hired and promoted, and that the City had violated this decree in regard to hiring.  The introduction then states: "Defendants further promote discriminatory practices which include failure to hire, failure to promote, failure to give the training necessary to be promoted to the next level, and segregation of tours based on race."  (Am. Compl. ¶ 1.)

The Amended Complaint then proceeds to lay out factual allegations which support the accusations of discrimination in hiring and promotion.  (Am. Compl. ¶¶ 16-91.)  With regard to the present Plaintiffs, the Amended Complaint alleges that: 1) Marble and West were denied promotions to Captain due to their race (Am. Compl. ¶ 41); and 2) Jones was denied a promotion to Battalion Chief due to her race (Am. Compl. ¶ 59).  In a section titled "Other Discriminatory Practices," the Amended Complaint alleges that Plaintiffs were "treated differently than Caucasian firefighters including but not limited to segregation to certain fire houses and tours because of their race and different treatment on making up promotional examinations."[1]  (*Id.* at ¶ 92.)  The Amended Complaint then alleges:

> 98.  The City of Newark and the Newark Defendants have systematically engaged in a pattern and practice of selective enforcement of disciplinary violations wherein Caucasian firefighters and officers were not disciplined in the same manner for disciplinary infractions and permit racial discriminatory remarks against African Americans.

> 99.  At all times relevant herein, the hierarchy of command within the Fire Department condones and acquiesces in the discriminatory practice and perpetuates the existence of a hostile work environment.

The Amended Complaint then has a section about Plaintiff Jones.  This section first makes

_____

[1] On March 13, 2007, this Court dismissed with prejudice the claims in ¶ 92 of the Amended Complaint.

factual allegations regarding the denial of a promotion to Jones to Battalion Chief  (Am. Compl. ¶¶ 100-113), and then states that "Jones was not provided with a separate shower area than the male members of the department."  (Am. Compl. ¶ 114.)

The Amended Complaint asserts six claims, of which four have survived prior motions: 1) Count I, for violation of the equal protection clause of the Constitution, pursuant to 42 U.S.C. § 1983; 2) Count II, for violation of 42 U.S.C. § 1981; 3) Count III, for violation of the New Jersey Law Against Discrimination; and 4) Count V, for conspiracy in violation of 42 U.S.C. § 1985.

The history of this litigation will not be recounted here in detail.  One event of particular significance to the decision on the instant motion is the August 20, 2004 Opinion ("Bissell Opinion") of the Honorable John W. Bissell (now retired), ruling on Defendants' motion to dismiss.  As will be discussed below, in that decision, as regards Plaintiffs Jones, Marble, and West, this Court dismissed all promotion-related claims except those of Jones and ruled that only Jones could pursue a claim related to promotion.

On March 28, 2008, Defendants filed the instant motion for summary judgment.

## II.    Jurisdiction/Venue

This Court has jurisdiction based on the existence of a federal question, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## III.    Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R.

Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The need of the non-movant to conduct further discovery does not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment. *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

## IV.    Defendants' motion for summary judgment

As a preliminary matter this Court observes that Plaintiffs' opposition brief includes arguments regarding promotion decisions adverse to West and Marble.  On August 20, 2004, Judge Bissell issued an Opinion and Order which decided, on the merits, a motion to dismiss by Defendants.  This Court held that, as to Counts I, II, III, and V – the same Counts at issue in the instant motion – "these counts can only be prosecuted by certain plaintiffs with regard to promotion

decisions.  Plaintiffs Kirkland, Wheeler, Mason, Wapples and Jones maintain their specific promotion-related claims under Counts I, II, III and V."  (Opinion of August 20, 2004 at 15.) Plaintiffs West and Marble are not included in the list of Plaintiffs whose promotion-related claims survived the motion to dismiss.  This is the law of the case, and this Court will not relitigate these settled issues.  *See Public Interest Research Group of N.J., Inc. v. Magnesium Elecktron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

### A.    Summary judgment on Count I of the Amended Complaint (42 U.S.C. § 1983)

Count I of the Amended Complaint alleges that Defendants maintained employment policies which illegally discriminated on the basis of race and gender, in violation of the equal protection clause of the Fourteenth Amendment, and that Plaintiffs received different treatment from those similarly situated and suffered adverse employment actions.  The Amended Complaint alleges that Defendants "maintained a racial policy of treating Caucasians more favorably than minorities" and "maintained a policy of treating male employees more favorable [sic] than Plaintiff Jones."  (Am. Compl. ¶¶ 116, 117.)

Title 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured  in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs base their § 1983 claim on a theory of municipal liability through municipal policy.  The Supreme Court has set forth the following principles for establishing a violation of 42 U.S.C. § 1983, based on such a theory:

5

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.  Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. . .

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. . .

*Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  The distinction between conduct that may be attributed to the municipality, and conduct of the municipality that manifests culpability and causality sufficient for the imposition of municipal liability under § 1983, is crucial in this case and will be discussed further below.

Defendants move for summary judgment with a number of arguments, but the bottom line is that, as the moving party without the burden of proof at trial, they meet their initial Rule 56 burden by pointing to the absence of evidence that would allow Plaintiffs to carry their burden of proof at trial.  *Celotex*, 477 U.S. at 325.  The Rule 56 burden then shifts to Plaintiffs.  In response, Plaintiffs offer evidence to support a number of different theories of § 1983 liability.  Foremost among them is the theory that Plaintiffs summarize as follows:

> All three Plaintiffs are able to establish that it was the Defendant's failure to enforce or even use its discrimination policy that caused their injuries.  All of Plaintiff's complaints of discrimination and racial hostility were mishandled, quashed or ignored.  Had Defendants followed the discrimination policy, each of Plaintiffs complaints, regardless of merit, should have been properly investigated and proper remedial action should have followed.  Instead, no investigations into Marble and

6

Jones' complaints were completed, which fostered the continued racially derogatory remarks to Plantiffs, and acts which caused West not to be promoted. Furthermore, the lack of a policy also caused each Plaintiff to be subjected to a hostile work environment. Therefore, because no one in the Department knew what to do with discrimination complaints, the problems Plaintiffs experienced were never investigated or redressed. This mishandling of complaints was so widespread that it constituted an official policy and custom that Defendants are directly liable under § 1983.

(Pls.' Opp. Br. 25-26.)

This theory of municipal liability rests on an alleged failure to act affirmatively – the failure to properly respond to discrimination complaints. The Supreme Court addressed a similar case in *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In *Canton*, the Court considered whether inadequate police training could be the basis for § 1983 liability for a municipality. *Id.* at 388. The Court first asked whether the training program was adequate. *Id.* at 390. Concluding that it was not adequate, the Court asked whether the inadequacy of the program could be said to represent a policy of the municipality. *Id.* The Court held that the need for better training must be so obvious, "and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The municipality is liable under § 1983 only when its failure to act "reflects a 'deliberate' or 'conscious' choice." *Id.* at 389.

Following the principles set forth in *Canton*, the Third Circuit has articulated the legal test of § 1983 municipal liability for failure to act affirmatively as follows:

a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citation omitted).

In the instant case, Plaintiffs allege that the municipality's discrimination complaint investigation practices were inadequate. Even if this Court were to accept that the investigation practices were inadequate, as Plaintiffs allege, and that the inadequacy represents a policy of the municipality, Plaintiffs have still failed to state a valid § 1983 municipal liability claim: Plaintiffs do not allege here that the municipality's failure to investigate their complaints reflects a deliberate choice or deliberate indifference, nor that the need for better investigation was so obvious that the policymakers were deliberately indifferent to the need. The Supreme Court has stated that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Because Plaintiffs have failed to allege deliberate indifference, no less offered evidence of it, their claim must fail.

Furthermore, "for liability to attach . . . the identified deficiency . . . must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391. The Supreme Court has made clear that, in addition to the "stringent standard of fault" stated in *Brown*, courts must apply a stringent standard of causation:

> Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. As we recognized in Monell and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights. A failure to apply stringent culpability and causation requirements raises serious federalism concerns, in that it risks constitutionalizing particular hiring requirements that States have themselves elected not to impose. Cf. Canton v. Harris, 489 U.S. at 392.

*Brown*, 520 U.S. at 415.

As will be seen in the following analysis, Plaintiffs' evidence fails to meet the stringent causation and culpability requirements stated in *Brown*. The evidence offered by Plaintiffs is not sufficient to raise genuine factual issues as two essential elements of their claims: 1) causation; and 2) deliberate indifference.

   1.  Plaintiff West

Plaintiffs' sole argument for West's § 1983 claim concerns the evidence regarding the alleged failure to promote him to Supervising Fire Prevention Specialist. As discussed above, this Court resolved this issue in the Bissell Opinion of August 20, 2004: West's § 1983 claim for failure to promote was dismissed. This Court recognizes that the claim dismissed in 2004 was West's claim for promotion to a different job, that of Captain, which is the promotion claim stated in the Amended Complaint. West, however, has never sought leave to amend the Complaint to allow a claim for his not getting the position of Supervising Fire Prevention Specialist.

   2.  Plaintiff Jones

In regard to Plaintiff Jones, Plaintiffs point to evidence on three issues: 1) the City's failure to provide a women's bathroom; 2) gender-related harassment; and 3) the failure to promote her to Battalion Chief. This evidence is insufficient to meet Plaintiffs' burden of proof at trial: the missing elements of a § 1983 municipal liability claim are causation and deliberate indifference. Plaintiffs point to no evidence from which a reasonable jury could conclude that the constitutional violations complained of were <u>caused</u> by a <u>deliberate indifference</u> that is properly attributed to the policymakers of the municipality.

First, in regard to the claim for failure to provide a women's bathroom, Plaintiffs do not articulate a claim cognizable as a constitutional violation pursuant to a policy or custom. Even if the

9

failure to provide Jones with a separate bathroom were found to constitute a failure of a municipality to act affirmatively, Plaintiffs have offered no evidence from which a reasonable jury could conclude that this failure represents municipal policy, or that it was so obvious that this policy would violate constitutional rights that municipal officials can reasonably be said to have been deliberately indifferent to the need to take action.

Second, in regard to the claim for gender-related harassment, Plaintiffs do not articulate a claim cognizable as a constitutional violation pursuant to a policy or custom. Plaintiffs have offered no evidence from which a reasonable jury could conclude that either the gender-related harassment or the failure to stop it was caused by an official custom, nor that it was so obvious that this custom would cause violation of constitutional rights that municipal officials can reasonably be said to have been deliberately indifferent to the need to take action.

Third, in regard to the claim for failure to promote, Plaintiffs do not articulate a claim cognizable as a constitutional violation pursuant to a policy or custom. Plaintiffs have offered no evidence from which a reasonable jury could conclude that the failure to promote Jones was caused by an official custom, nor that it was so obvious that this custom would violate constitutional rights that municipal officials can reasonably be said to have been deliberately indifferent to the need to take action. Moreover, in light of the fact that Plaintiffs concede that Jones took the examination for Battalion Chief and failed it, Plaintiffs have not persuaded this Court that a policy of the municipality can be said to have caused her to not be promoted. (Pls.' Opp. Br. 31.)

In sum, no reasonable jury could conclude from the evidence presented that, as to any of the three violations Jones complains of, "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415. To obtain a judgment of municipal liability

10

under § 1983, it is not sufficient to show a violation of constitutional rights; the stringent causality and culpability requirements of *Brown* must be met.

        3.     Plaintiff Marble

Regarding Plaintiff Marble, Plaintiffs point to evidence that Marble made discrimination complaints to which the municipality did not adequately respond. Again, however, Plaintiffs present no evidence from which a reasonable jury could conclude that the municipality's failure to adequately investigate Marble's discrimination complaints reflected a policy or custom, nor that it was so obvious that such a custom would violate constitutional rights that municipal officials can reasonably be said to have been deliberately indifferent to the need to take action, nor that the failure to investigate adequately directly caused, under the rigorous <u>Brown</u> standard, a violation of constitutionally-protected rights.

Viewed in the light of the rigorous <u>Brown</u> standard for causation, Plaintiffs have not established the existence of a genuine factual issue as to whether the municipality bears the requisite culpability for the alleged failures to investigate the complaints, nor as to whether the alleged failures directly caused a deprivation of Plaintiffs' federal rights. Plaintiffs do not even contend that, no less point to supporting evidence of, the inadequate response of the municipality to discrimination complaints reflected a deliberate choice on the part of municipal policymakers. Thus, Defendants' motion for summary judgment will be granted as to Count I.

### B.    Summary Judgment on Count II of the Amended Complaint (42 U.S.C. § 1981)

Count II of the Amended Complaint alleges that: 1) Defendants did not hire, or promote, or pay wage increases to Plaintiffs as part of a deliberate plan to discriminate against minorities on account of race; and 2) "Plaintiffs were the victims of a hostile work environment designed to force

11

Plaintiffs from employment . . . based on their race."  (Am. Compl. ¶ 124, 125.)

Race discrimination claims under 42 U.S.C. § 1981 are decided by application of the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jones v. School Dist.*, 198 F.3d 403, 410 (3d Cir. 1999).  The Third Circuit has provided this summary of the three stages of the *McDonnell Douglas* analysis:

> First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.*

The Third Circuit has provided this outline of the requirements of the prima facie case:

> Under the familiar shifting burdens analysis of McDonnell Douglas, a plaintiff must initially establish a minimal prima facie case -- essentially, that he or she is a member of a protected class and was qualified for an employment position, but that he or she was either not hired for that position or was fired from it 'under circumstances that give rise to an inference of unlawful discrimination.'

*Waldron v. SL Indus.*, 56 F.3d 491, 494 (3d Cir. N.J. 1995) (quoting *Burdine*, 450 U.S. at 253).  In *Sarullo*, the Third Circuit set forth four elements needed to establish a prima facie case of failure to promote:

> The existence of a prima facie case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.

*Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Defendants move for summary judgment on Count II, contending that Plaintiffs have no evidence that race was a factor in any adverse employment action suffered by Plaintiffs.

           1.       Plaintiff West

As to Plaintiff West, the parties dispute the question of whether illegal discrimination was the true reason for the decision to not appoint him to the position of Supervising Fire Prevention Specialist. As discussed above, no such claim appears in the Amended Complaint. Also, again, pursuant to the Bissell Opinion of August 20, 2004, West is not among the five plaintiffs whose promotion claims survived Defendants' motion to dismiss.

This Court offers the following comments in anticipation of a motion for reconsideration. Although, in the conclusion section of the Bissell Opinion, the Opinion speaks of dismissing and allowing certain "promotion-related claims," it is clear from the body of the Opinion that the Court meant to include within the scope of that phrase all "claims concerning the selection of candidates off of the eligibility list." (Bissell Opinion at 13.) As the Merit System Board decision makes clear, West's claim about appointment to the position of Supervising Fire Prevention Specialist concerns the selection of candidates off of an eligibility list. (Schwartz Cert. Ex. F at 1.)

Furthermore, this Court observes that the Merit System Board decision states that the first candidates who were hired for the position were not hired until approximately January of 2006. (Schwartz Cert. Ex. F at 1.) The Amended Complaint was filed in 2003 and has not been subsequently amended. West's claim regarding appointment to the position of Supervising Fire Prevention Specialist is not part of this case. Plaintiffs' arguments on this issue fail to defeat Defendants' motion for summary judgment as to Count II. As to West, Defendants' motion for summary judgment on Count II will be granted.

2.    Plaintiff Jones

As to Plaintiff Jones, Defendants argue that they are entitled to summary judgment on Count II because there is no evidence that Jones was not promoted to Battalion Chief because of illegal racial discrimination.  Plaintiffs respond with a number of arguments, but conspicuously absent from them – despite having quoted the relevant standard for establishing a prima facie case from *Sarullo* in their introduction – is any discussion of the requirements for establishing a prima facie case of race discrimination under *McDonnell Douglas* or its progeny.  Plaintiffs point to evidence that Jones received disparate treatment based on race in assignment to field positions, which "denied her the opportunity to gain the experience to become a Battalion Chief." (Pls.' Opp. Br. 31.)  Plaintiffs point as well to evidence that, for a period of time, Jones was unfairly prevented from taking the examination for Battalion Chief.  (*Id.*)  Plaintiffs concede that, ultimately, Jones took the Battalion Chief examination and failed it.  (*Id.*)

This evidence is insufficient to make out a prima facie case that Jones was not promoted to Battalion Chief because of race discrimination.  An essential element of the prima facie case for failure to promote or hire is that the plaintiff was qualified for the position sought.  Plaintiffs do not point to evidence that Jones was qualified for promotion to Battalion Chief.  In view of the undisputed fact that Jones failed the Battalion Chief examination, together with the fact that Plaintiffs do not even allege that race discrimination was involved in that failure, the evidence does not give rise to an inference that Jones was not promoted because of unlawful discrimination.

As to Jones' claim for violation of 42 U.S.C. § 1981, Plaintiffs have failed to point to evidence sufficient to meet their burden at trial of making out a prima facie case of unlawful discrimination under *McDonnell Douglas*, and have failed to carry their burden to defeat the motion

14

for partial summary judgment.  As to Count II for Plaintiff Jones, Defendants' motion for partial summary judgment will be granted.

3.      Plaintiff Marble

As to Plaintiff Marble, Defendants argue that they are entitled to summary judgment on Count II because he has alleged only two instances of "racially charged language" over 25 years of employment which cannot, as a matter of the law of § 1981, constitute a hostile work environment. In response, Plaintiffs point to Marble's deposition statements that he experienced more than the two incidents for which he made formal complaints.  (*See*, *e.g.*, Zeff Cert. Ex. O at 19:10-22:13.)

"To establish hostile work environment, plaintiffs . . . must show harassing behavior sufficiently severe or pervasive to alter the conditions of [their] employment." *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004).  Determination of the severity and pervasiveness of the racial hostility Marble experienced at work requires weighing the evidence and is a matter for the jury.  The existence of genuine issues as to material facts precludes a grant of summary judgment on this issue. As to Plaintiff Marble's Count II hostile work environment claim, Defendants' motion for partial summary judgment will be denied.

**C.      Summary Judgment on Count III of the Amended Complaint (NJLAD)**

Count III of the Amended Complaint alleges that Defendants violated the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12 ("NJLAD").  Defendants move for summary judgment on Count III, contending that Plaintiffs have no evidence that Defendants created a hostile work environment based on Plaintiff's race or gender, or that Defendants illegally discriminated against Plaintiffs in making promotional decisions.

1.      Hostile work environment under the NJLAD

15

In *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 603-604 (1993), the New Jersey Supreme Court stated the elements of a cause of action for a hostile work environment based on gender discrimination, under the NJLAD:

> the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.

The elements of a cause of action for a hostile work environment based on race, under the NJLAD, are parallel. *Taylor v. Metzger*, 152 N.J. 490, 498 (1998).

As to Plaintiff West, Plaintiffs' opposition brief does not assert that there is any evidence of a hostile work environment based on race.

As to Plaintiff Jones, Plaintiffs' opposition brief points to evidence of hostile comments related to her gender, not to her race. Count III does not specify the conduct by which Defendants violated the LAD, but incorporates all preceding allegations in the Amended Complaint. The factual allegations about Jones in the Amended Complaint relate to the failure to promote her to Battalion Chief, and to the failure to provide her with a separate shower. (Am. Compl. ¶¶ 100-114.) The Amended Complaint contains no allegation that Jones – or any plaintiff – experienced a hostile work environment due to hostile gender-related comments. No such claim appears in the Amended Complaint, and, therefore, no claim for hostile work environment related to gender is in this case.

As to Plaintiffs West and Jones, Plaintiffs have failed to carry their burden to defeat Defendants' motion for summary judgment on the issue of hostile work environment under Count III, and, as to these matters, Defendants' motion for summary judgment will be granted.

It is only as to Plaintiff Marble that Plaintiffs' opposition brief points to evidence of hostile

conduct related to his race.  As already indicated, where the record contains evidence of such hostile conduct, a hostile work environment claim is ill-suited to resolution on summary judgment. Defendants do not dispute that Marble made complaints about events that a reasonable jury might – or might not – find were severe or pervasive enough to lead to a conclusion that the environment was hostile.  Such a determination requires weighing of the evidence, which the Court does not do at summary judgment, and which is the province of the jury.  As to the hostile work environment aspect of Count III, and as to Plaintiff Marble only, Defendants' motion for partial summary judgment will be denied.

2.      Disparate treatment under the NJLAD

The parties agree that, to resolve these disparate treatment claims under the NJLAD, this Court employs the *McDonnell Douglas* analysis.

Defendants move for summary judgment only as to the Count III claims by West and Jones of disparate treatment due to failure to promote.  As to Jones, however, the single paragraph submitted by Plaintiffs says nothing about disparate treatment due to failure to promote.

As to West, Defendants contend that they are entitled to summary judgment because: 1) all of the individuals appointed to the Supervisor Fire Prevention Specialist Position were minorities, two of whom were African-American; and 2) West's retirement rendered him ineligible for the position.  Plaintiffs make arguments in opposition.  As already discussed, however, the Amended Complaint contains no claim regarding West's application for the Supervisor Fire Prevention Specialist Position.  Moreover, even if this Court were inclined to amend the Complaint sua sponte – which it is not – the Bissell Opinion specifically limited the "promotion-related" claims to five Plaintiffs, and West was not among the five.  This decision is the law of the case.

17

As to Plaintiffs' disparate treatment claims under Count III, Plaintiffs have failed to carry their burden to defeat Defendants' motion for summary judgment. As to the disparate treatment claims under Count III, Defendants' motion for summary judgment will be granted.

Thus, in summary, the only part of Count III that survives this motion for summary judgment is Plaintiff Marble's claim for a hostile work environment.

### D.     Summary Judgment on Count V of the Amended Complaint (42 U.S.C. § 1985)

Defendants move for summary judgment on Count V, for conspiracy in violation of 42 U.S.C. § 1985, arguing, inter alia, that agents or employees of an entity cannot form a conspiracy with the entity within the meaning of § 1985 because a person cannot conspire with himself. In their opposition brief, Plaintiffs do not address Defendants' motion as to Count V. This Court construes Plaintiffs' silence as to Count V as a concession that Defendants are correct. As to Count V, Defendants' motion for summary judgment will be granted.

## VI.     Conclusion

For the reasons stated above, Defendants' motion for summary judgment (Docket Entry No. 96), pursuant to FED. R. CIV. P. 56, is granted in part and denied in part. Defendants have moved for summary judgment as to Plaintiffs Jones, Marble, and West on Counts I, II, III, and V of the Amended Complaint. The motion for summary judgment is denied as to Count II for Marble's hostile work environment claim and as to Count III for Marble's hostile work environment claim. The motion for summary judgment is granted as to the remainder of the claims of Jones, Marble, and West in Counts I, II, III, and V, and judgment will be entered in Defendants' favor on these portions of these claims. Thus, as to Counts I, II, III, and V, the claims that survive this decision are: 1) Marble's Count II claim for hostile work environment; and 2) Marble's Count III claim for hostile

work environment.  An Order follows.

**S/Susan D. Wigenton, U.S.D.J.**

cc:  Judge Madeline Cox Arleo, U.S.M.J.